WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Robert Harper,<br><br>　　　　　Defendant. | No. CR-99-00960-001-PHX-JAT<br><br>**ORDER** |

　　　　Pending before the Court is Defendant Robert Harper's Amended Motion for Relief Pursuant to § 3582(c)(1)(A). (Doc. 67). The government has submitted a Response, (Doc. 72), and Defendant has replied. (Doc. 76). Having considered Defendant's motion and the parties' briefing, this Court will deny the motion.

**I.　　BACKGROUND**

　　　　Defendant Robert Harper has a long criminal history that stretches back to his teenage years. (Doc. 67-1 at 13). In 1986, as an adult, he was found guilty of charges including armed burglary, rape, sodomy, and assault with a deadly weapon. (Doc. 72 at 2). Defendant, on numerous occasions, climbed "through the window of a female victim while wielding a knife" and committed the acts he was ultimately convicted of. (*Id.*). He was sentenced by the District of Columbia Superior Court to forty-three years to life. (Doc. 67-1 at 13). His time behind bars has not been without incident. While serving time at Lorton Reformatory in Virginia, Harper held a knife to the neck of a female photography teacher and robbed her to pay a heroin drug debt. (Doc. 72 at 2). He was sentenced to a consecutive

ninety-six-month sentence. (*Id.*). He had previously been convicted of assaulting a correctional officer during a prison riot at a state facility. (Doc. 67-1 at 13).

His Arizona conviction, from which he is seeking a sentence reduction, arose out of a 1999 incident involving a female correctional officer. (Doc. 72 at 2). Defendant sent a letter to the officer threatening to "injure and kill [her] ... and members of her family if she did not engage in a sexual act with him." (*Id.*). In 2000, he was sentenced to a consecutive sentence of thirty-seven-months. (*Id.*). Aside from the numerous convictions arising out of his actions while incarcerated, Defendant has also been sanctioned for a number of other incidents. In March 2022, he was sanctioned for attempted assault and possession of drugs. (*Id.* at 8). In 2015, he faced discipline for "attempting to introduce drugs into the prison through the prison visiting room." (*Id.*).

Defendant sought parole in 2021. The United States Parole Commission granted his parole but only from his first District of Columbia sentence. (*Id.* at 2). He was paroled to serve his sentences from Virginia and Arizona. (*Id.*). His grant of parole noted that if the sentences "do not immediately take effect upon parole, do not release on parole and contact the United States Parole Commission." (*Id.*). Defendant is now serving his Virginia sentence. He is seeking compassionate release from his Arizona sentence, which he has yet to serve. (*See* Doc. 67).

Defendant is sixty-five years old and has been in federal custody for thirty-five years. (Doc. 67-1 at 11). He is currently suffering with type II diabetes with polyneuropathy, a high body mass index, hypertension, hyperlipidemia, high cholesterol, tooth disease, and skin and vision problems. (*Id.*). He also notes that there are some staff members at the prison who have tested positive for COVID-19, though he has received a vaccination and booster shot. (*Id.* at 12). Defendant claims that his age, time spent in prison, health conditions, and the fact that he is more susceptible to COVID-19 and unable to engage in protocols to mitigate that risk while in prison entitle him to compassionate release. (*Id.* at 11–12).

## II. LEGAL STANDARD

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). Compassionate release is an exception to this general rule, allowing a court to reduce a term of imprisonment if a defendant meets certain requirements. *See* 18 U.S.C. § 3582(c)(1). "Section 3582(c) previously provided for compassionate release only upon motion of the [Bureau of Prisons (BOP)] Director." *United States v. Partida*, No. CR 17-08260-001-PCT-DGC, 2020 WL 3050705, at *1 (D. Ariz. June 8, 2020). Now, after the enactment of the First Step Act of 2018, a defendant may bring such a motion under § 3582(c) after first exhausting administrative remedies with the BOP. *See id.* at *2; *United States v. Johns*, No. CR 91-392-TUC-CKJ, 2019 WL 2646663, at *1 (D. Ariz. June 27, 2019). The defendant must request that the BOP bring a motion for compassionate release on his behalf or wait thirty days after making such request to file his own motion. *See* 18 U.S.C. § 3582. "[A] district court must enforce the administrative exhaustion requirement articulated in 18 U.S.C. § 3582(c)(1)(A) when the government properly invokes the requirement." *United States v. Keller*, No. 20-50247, 2021 WL 2695129 (9th Cir. July 1, 2021).

For a court to grant compassionate release it must find that "extraordinary and compelling reasons warrant" a reduction in sentence "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). "[T]he Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant," but "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).

One such informative policy statement is U.S.S.G. § 1B1.13(2), which provides that a court may consider whether a movant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Section 3582(c) also requires a court

to "consider[] the factors set forth in section 3553(a) to the extent that they are applicable" when analyzing a motion for compassionate release. The § 3553(a) factors include:

> [T]he nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; relevant policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims.

*United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013) (citing 18 U.S.C. § 3553(a)). To grant compassionate release, a court must find both an extraordinary and compelling reason for compassionate release and that the § 3553(a) factors warrant compassionate release. *See Magana-Lopez*, 2020 WL 3574604, at *2–5 (considering extraordinary and compelling reasons and § 3553(a) factors separately); *United States v. Platt*, No. CR 18-195-WJM, 2020 WL 3839847, at *3 (D. Colo. July 8, 2020) (same). "[A]lthough a district court must perform this sequential inquiry before it grants compassionate release, a district court that properly denies compassionate release need not evaluate each step." *Keller*, 2021 WL 2695129, at *5.

**III.   DISCUSSION**

    **a.  Administrative Exhaustion**

The government concedes that Defendant exhausted the administrative requirements. (*See* Doc. 72 at 3, n.1). This court agrees.

    **b.  Extraordinary and Compelling Circumstances**

When analyzing whether Defendant provides extraordinary and compelling reasons for a sentence reduction, this Court must look at whether those reasons could have been reasonably foreseen at the time of sentencing. *See United States v. Acosta*, CR-03-00075, 2021 WL 1790773, *3 (D. Ariz. May 5, 2021). Further, as the *Acosta* Court noted, "it is rare to receive a sentence reduction because of a medical issue." *Acosta*, CR-03-00075, 2021 WL 1790773 at *3. Here, Defendant has not shown that his circumstances warrant early release, because none of the reasons he suggests make him eligible for compassionate

release meet this high standard.

The Defendant notes that it is not any one single factor that constitutes an extraordinary and compelling reason, but rather the combination of all of the factors. (*See* Doc. 76 at 4). He first notes that Application Note 1(B) to the Sentencing Commission's policy statement provides that extraordinary and compelling reasons exist where the Defendant is at least sixty-five years old, is experiencing a "serious deterioration" in physical or mental health because of the aging process, and has served at least ten years or seventy-five percent of his term of imprisonment. (*See* Doc. 67 at 7). Defendant asserts that because he is sixty-five and has served almost forty years, and because of his health conditions, he is eligible for release.

Defendant claims that he suffers from a number of health problems that all make him more susceptible to COVID. His conditions such as diabetes, hypertension, high cholesterol, and other associated illnesses, he contends, are "recognized by the Centers for Disease Control and Prevention (CDC) as high risk factors for COVID-19 ...." (*Id.* at 8). Further, he states that he is particularly vulnerable because he is in close-quarters confinement in maximum-security prison. (*See id.*). Therefore, he maintains, this presents an extraordinary and compelling circumstance justifying compassionate release.

It is true that these health issues do make him more susceptible to COVID-19. As the CDC has stated, "[a]dults with some underlying medical conditions, such as ... diabetes, are more likely than others to become severely ill if infected with COVID-19." *See Diabetes and COVID-19*, CDC, https://www.cdc.gov/diabetes/library/reports/reportcard/diabetes-and-covid19.html (last visited Mar. 9, 2023). Additionally, hypertension can lead to worse outcomes for people who contract the virus. *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 9, 2023).

Yet even coupled with his age and time spent incarcerated, that is not enough to meet the extraordinary and compelling bar. First, as noted above, this Court is not bound

by the Sentencing Commission's policy statement. *Aruda*, 993 F.3d at 802. Even so, an increased risk of COVID and complications from it do not constitute a "serious deterioration" in health. All he is presenting is the mere possibility of contracting the virus a second time. Courts in this Circuit have previously denied relief in similar circumstances. *See United States v. Capito*, CR-10-08050-001, 2021 WL 4552954 (D. Ariz. Oct. 5, 2021) (denying compassionate release to a sixty-three year old prisoner who had hypertension, obesity, and hyperlipidemia who asserted that the possibility of contracting COVID presented an extraordinary and compelling reason for release.). This Court has also previously noted that "[c]ourts in this circuit ... have held that 'the risk of a second infection does not constitute sufficiently compelling grounds to justify compassionate release.'" *United States v. Nash*, CR-03-00059-001, 2021 WL 1969729, *2 (D. Ariz. May 6, 2021). This case is no different. Furthermore, not only has Defendant been infected with COVID previously, but he has also received two Moderna vaccines and a booster shot. (*See* Doc. 67-1 at 25). This weighs against a finding of extraordinary and compelling. *See Nash*, CR-03-00059-001, 2021 WL 1969729 at *3 (noting that "[c]ourts in this circuit have found that a defendant's receipt of the COVID-19 vaccine weighs against granting compassionate release."). Given his natural immunity from contracting the virus plus his immunity from the multiple rounds of vaccinations, this Court finds that no extraordinary and compelling reasons exist to release the Defendant.

This Court holds that Defendant has failed to show how the combination of his age, medical issues, and the existence of COVID-19 constitute extraordinary and compelling reasons for compassionate release. Consequently, this is enough to end the Court's analysis. Yet, even if this Court did find that extraordinary and compelling reasons existed, Defendant's motion would fail under the other elements of the analysis.

  c. **Danger to the Community**

Despite the education that Defendant has received while incarcerated, he still poses a high risk to the community. As other courts in this District have noted, even if a defendant "demonstrates extraordinary and compelling reasons for his compassionate release" the

Court may still "deny his motion if he still poses a 'danger to the safety of any other person or to the community.'" *Capito*, CR-10-08050-001, 2021 WL 4552954 at *5. And it is Defendant who bears the burden of "demonstrating that he poses no danger to the community upon release." *Id.* Defendant's long criminal history, coupled with his numerous infractions while in prison, the most recent of which occurred in March of last year, shows that he is still a threat to the community.

Defendant states that he has had an "exemplary" record in prison since his most recent conviction in 2000. (*See* Doc. 67 at 8). Thus, he claims, he is not a danger to the community. He notes that he earned his GED in 2008 and completed more than "80 education courses." (*Id.*) (internal quotations omitted). He also points out that his "grid score" was reduced from 3 to 2 since his parole hearing. (*Id.*). In addition, he has been participating in the Resolve Program and will graduate soon. (*Id.* at 9). Finally, Defendant asserts that he has a plan in place for when he is released that will help keep him on track. (*Id.*). This involves living with his aunt and working with the Mayor's Office of Returning Citizen Affairs and the United Planning Organization. (*See id.* at 9–10).

The government notes, however, that Defendant's rehabilitation is not as complete as it would seem. First, although Defendant has completed numerous courses of study, he has been disciplined multiple times while incarcerated. Aside from the two convictions he received for crimes committed behind bars, in 2015 he was disciplined for "attempting to introduce drugs into the prison through the prison visiting room." (Doc 72 at 8). In March of 2022, he was sanctioned for attempted assault and for "possessing drugs while in prison." (*Id.*). Assault and drug possession is the same type of conduct that led to his three criminal convictions. Overall, there is little to indicate that Defendant will not continue to engage in these same activities once released. He poses a danger to the community. Thus, compassionate release is not warranted.

**d. Section 3553(a) Factors**

Finally, this Court finds that the Section 3553(a) factors also weigh against release. The nature and circumstances of both his initial crimes and the crime he was convicted of

in Arizona are extreme. He was initially convicted of armed burglary, rape, sodomy, and assault with a deadly weapon. (*See* Doc. 72 at 2). In Arizona he sent a letter to a female correctional officer threatening to kill her and her family if she did not engage in sexual acts with him. (*Id.*). This conduct is quite similar to the conduct that led to his first sentence. Additionally, he has not served any of his Arizona sentence. (*See id.* at 6). A reduction of his sentence thus does not seem to be warranted because that would not reflect the seriousness of his crimes. *See United States v. Rice*, No. 12-CR-818-PJH, 2020 WL 3402274, at *3 (N.D. Cal. June 19, 2020) (finding, in part, that the nature of defendant's crime did not warrant reducing defendant's prison sentence).

Additionally, granting compassionate release would not afford adequate deterrence. Defendant has a criminal history stretching back to his teenage years. He has repeatedly engaged in assaults, drug use, and crimes of a sexual nature. As noted above he has been disciplined multiple times while in prison, most recently last year. There is nothing to indicate that his behavior will change. Thus, the need to deter him from engaging in these behaviors is quite strong. Reducing Defendant's sentence would work directly against this. Furthermore, keeping Defendant in prison is also necessary to protect the public from further crimes of the Defendant. In sum, the Section 3553(a) factors point towards denying Defendant's motion for compassionate release.

### IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Amended Motion for Relief Pursuant to § 3582(c)(1)(A) (Doc. 67) is **DENIED**.

Dated this 24th day of March, 2023.

James A. Teilborg
Senior United States District Judge